## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **PENNY JEAN MARTINEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 14-1358-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.      Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning April 1, 1998.  (R. 11, 319, 324).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  She argues that the

Administrative Law Judge (ALJ) erred in his credibility determination, and in evaluating the medical opinions of Dr. Lear and Dr. Moeller in determining that Plaintiff's substance use disorder is a contributing factor material to the determination of disability in this case.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

    The court finds no error in the ALJ's determination that substance use is a

contributing factor material to the determination of disability in this case, and

consequently finds no error in his determination that Plaintiff is not disabled pursuant to

sections 223(d) and 1614(a)(3) of the Social Security Act.

**II.     Discussion**

    Because the record in this case contains medical evidence of potential drug

addiction or alcoholism (DAA), the ALJ recognized that he must apply a particular

regulatory analysis in considering whether Plaintiff is disabled within the meaning of the

Act. (R. 12, 13-14, 15-28).

    **A.     Framework for Applying the DAA Analysis**

    Section 105 of Public Law 104-121 amended the Social Security Act in 1996 to

add § 223(d)(2)(C) (codified at 42 U.S.C. § 423(d)(2)(C)), and to add § 1614(a)(3)(I)

(now codified at 42 U.S.C. § 1382c(a)(3)(J)) which provide that an individual will not be

considered disabled within the meaning of the Act "if alcoholism or drug addiction would

(but for this subparagraph) be a contributing factor material to the Commissioner's

determination that the individual is disabled."  The Commissioner promulgated

4

regulations which control in determining whether drug addiction or alcoholism is a

contributing factor material to the determination of disability.  60 Fed. Reg. 8140, 8147,

8151 (Feb. 10, 1995) (codified at 20 C.F.R. §§ 404.1535, 416.935).  Those regulations

provide:

> (a) <u>General</u>.  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) <u>Process we will follow when we have medical evidence of your drug addiction or alcoholism</u>.  (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism, and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

If a claimant <u>is determined to be disabled</u> and there is medical evidence of drug

addiction or alcoholism, the Commissioner must decide whether the drug addiction or

alcoholism is a contributing factor material to the determination of disability.  If it is, the

claimant will be found not to be "disabled" as defined in the Act.   Drapeau v. Massanari, 255 F.3d 1211, 1215 (10th Cir. 2001).  The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability "is whether the Commissioner would still find the claimant disabled if he or she stopped using drugs or alcohol."  Id.; see also 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1) (key factor is "whether we would still find you disabled if you stopped using drugs or alcohol").

Pursuant to 20 C.F.R. §§ 404.1535, 416.935, a finding of disability is a condition precedent to the determination of whether drug addiction or alcoholism is a contributing factor material to the disability determination.  Drapeau, 255 F.3d at 1214 (construing the 1996 amendment of the Act along with the regulations).  Therefore, where drug addiction or alcoholism is suggested, the ALJ must first apply the five-step sequential evaluation process to determine whether a plaintiff's limitations, including consideration of drug addiction or alcoholism, are disabling.  If so, the ALJ must then assess plaintiff's RFC limitations which would remain if she stopped using drugs or alcohol, and apply the sequential evaluation process a second time to determine whether the limitations assessed absent concurrent use would be disabling.  Id., 255 F.3d at 1214-15.

Shortly after Public Law 104-121 amended the Act regarding consideration of DAA evidence, the Social Security Administration (SSA) broadcast a teletype regarding questions and answers concerning DAA.  Social Security Administration, Office of Disability, EMERGENCY TELETYPE -- Questions and Answers Concerning DAA,

dated August 30, 1996 (cited in <u>Salazar v. Barnhart</u>, 468 F.3d 615, 623-24 (10th Cir.

2006)).  The teletype specifically addressed situations in which a claimant has one or

more other mental impairments in addition to DAA.  <u>Salazar</u>, 468 F.3d at 623.  The court

in <u>Salazar</u> noted the SSA's teletype acknowledgment that it is very difficult to

differentiate between restrictions and limitations resulting from a claimant's substance

use disorder and those resulting from her other mental impairments.  <u>Id.</u>  The <u>Salazar</u>

court quoted the teletype's explanation of how to handle such situations:

> The most useful evidence that might be obtained in such cases is that
> relating to a period when the individual was not using drugs/alcohol.  Of
> course, when evaluating this type of evidence consideration must be given
> to the length of the period of abstinence, how recently it occurred, and
> whether there may have been any increase in the limitations and restrictions
> imposed by the other mental impairments since the last period of
> abstinence.  When it is not possible to separate the mental restrictions and
> limitations imposed by DAA and the various other mental disorders shown
> by the evidence, a finding of 'not material' would be appropriate.

Social Security Administration, Office of Disability, <u>EMERGENCY TELETYPE --</u>

<u>Questions and Answers Concerning DAA</u>, dated August 30, 1996 (quoted in <u>Salazar</u>, 468

F.3d at 623).

The ALJ's decision in this case must be considered through the lens of this

regulatory framework for consideration of a disability application where the claimant is

determined to be disabled and the record contains evidence of drug addiction or

alcoholism.

**B.**     **The ALJ's Decision**

The ALJ recognized the standard he must apply. As noted above, he specifically recognized that if he found claimant is disabled and that there is medical evidence of substance use disorder, he must determine if the substance use disorder is a contributing factor material to the determination of disability. (R. 13-14). He stated that "[i]n making this determination, the undersigned must evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use. If the remaining limitations would not be disabling, the substance use disorder is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). If so, the claimant is not disabled." (R. 14).

In applying step three of the sequential evaluation process, the ALJ found that "claimant's impairments, including the substance use disorders, meet sections 12.04, 12.06, and 12.09 of" the Listing of Impairments. (R. 15) (finding no. 4) (bolding omitted). In support of that finding, he found that "claimant has a marked limitation in social functioning due to her mental impairments, when engaged in substance abuse," and "has a marked limitation in concentration, persistence, or pace due to her mental impairments, when engaged in substance abuse." (R. 16) (emphases added). This constitutes a determination that Plaintiff was disabled at step three when including consideration of her substance use disorder. Therefore, in accordance with the framework for DAA analysis, the ALJ again applied the sequential evaluation process considering only the limitations which would remain if Plaintiff stopped drug and alcohol use.

8

Applying step two, he determined Plaintiff "would continue to have a severe impairment or combination of impairments."  (R. 16) (finding no. 5) (bolding omitted). At step three he found that when not considering the effects of substance use disorder, Plaintiff "would not have an impairment or combination of impairments that meets or medically equals any" listed impairments.  Id. (finding no. 6) (bolding omitted).  He determined that Plaintiff "has no more than a moderate limitation in activities of daily living due to her mental impairments, when not engaged in substance abuse;" "has no more than a moderate limitation in social functioning due to her mental impairments, when not engaged in substance abuse," (R. 17); and "has no more than a moderate limitation in concentration, persistence, or pace due to her mental impairments, when not engaged in substance abuse."  (R. 18).

The ALJ assessed Plaintiff with the RFC for a limited range of light work if she stopped substance use.  (R. 19).  He found that Plaintiff's allegations of symptoms resulting from her impairments other than DAA "are not fully credible" (R. 20), and he explained the weight he accorded to the opinion evidence.  (R. 20-27).  He also explained how he had considered the evidence of substance use and abstinence over time:

> As to substances, the claimant admits to usage of street drugs beginning in 1983 with ending claimed to have occurred in 2008 (Exhibit 31E).  Prior to 2008, the [ALJ] finds that her substance abuse was material, resulting in symptoms and findings sufficient to meet the listings, as discussed above. Subsequently, the [ALJ] finds that substance abuse was no longer material after 2008, due to cessation of substance abuse.  However, her records from 2009 and 2010 indicate increased symptoms and functional problems due to misuse of medication.  The resulting improvement in her condition, discussed below, when not engaged in substance abuse, further supports a

finding that, without substance abuse, the claimant was capable of the
above residual functional capacity.

(R. 20).

The ALJ found at step four that if substance use stopped, Plaintiff would be unable
to perform past relevant work.  (R. 27).  But, at step five he found that "there would be a
significant number of jobs in the national economy that [she] could perform."  Id. (finding
no. 12) (bolding omitted).  Therefore, he found that Plaintiff's substance use disorder is a
contributing factor material to the determination of disability, he found that she is not
"disabled" within the meaning of the Act, and he denied her applications.  (R. 28-29).

### C.    Analysis

Plaintiff first argues that the ALJ ignored the "prolonged period of sobriety since
2008."  (Pl. Br. 4).  She argues that "[w]hile the ALJ correctly determined that [P]laintiff
was unable to perform substantial gainful activity [(SGA)], he found that substance abuse
was ongoing and that, if [P]laintiff were to stop abusing substances, she would be able to
return to competitive work, even while noting that [P]laintiff never engaged in SGA after
April 1, 1998."  (Pl. Br. 4).  That argument is without merit.  The ALJ acknowledged that
Plaintiff's substance abuse ceased in 2008--he specifically stated that, after 2008,
substance use was no longer a contributing factor material to the determination of
disability "due to cessation of substance abuse."  (R. 20).

Moreover, Plaintiff's argument reflects a misunderstanding of the decision at issue.
She argues that the ALJ correctly determined that Plaintiff was unable to perform SGA,

but that is not the case.  When the ALJ first applied step three, he determined that when

considering Plaintiff's "impairments, including the substance use disorder," her condition

meets the criteria of Listings 12.04, 12.06, and 12.09.  (R. 15) (finding no. 4) (bolding

omitted, underline added).  While that finding constitutes an initial determination that

Plaintiff is disabled, and necessarily implies that Plaintiff is unable to perform SGA when

including limitations attributable to concurrent substance use, the ALJ continued to apply

the regulatory DAA framework and considered what would be Plaintiff's remaining

limitations when she has no concurrent substance use.  In doing so, he found at step two

that her remaining impairments continue to be severe, at step three that her remaining

impairments would not meet or medically equal the severity of a Listed Impairment, and

at step four that she would remain unable to do past relevant work.  (R. 16-27).  And he

found at step five that there are a significant number of jobs in the national economy

Plaintiff is able to perform when she has no concurrent substance use.  (R. 27-28).  That is

necessarily a finding that Plaintiff is able to perform SGA when she has no concurrent

substance use.

Plaintiff's argument also appears to misunderstand the ALJ's application of the

DAA framework's "key factor" as a determination that Plaintiff has had no period when

she has not used drugs.  As quoted above, the regulatory "key factor" the Social Security

Administration will consider "in determining whether drug addiction or alcoholism is a

contributing factor material to the determination of disability is whether we would still

find you disabled if you stopped using drugs or alcohol."  20 C.F.R. §§ 404.1535(b)(1),

11

416.935(b)(1) (emphasis added).  Therefore, the ALJ's decision when applying the sequential evaluation process the second time and considering what limitations remain when there is no concurrent substance abuse, frequently used the regulatory qualifying phrase, "if the claimant stopped the substance use," or similar language.  (R. 16-20, 27-28) (passim).  Plaintiff understands these qualifying phrases to mean that the ALJ did not recognize Plaintiff had any periods of sobriety.   However, as noted above, the ALJ made clear that he recognized Plaintiff's substance abuse ceased after 2008.  Moreover, when applying the sequential evaluation process the second time, the ALJ repeatedly expressed his recognition that Plaintiff had ceased substance abuse, and his consideration of and reliance on her condition when she was not using.  (R.17, 18, 23, 24) (passim) ("when not engaged in substance abuse"); (R. 22) ("claimant had greater limitations, both with and without substance abuse, than suggested by Dr. Witt"); (R. 25) ("claimant's current condition, now that she has ceased substance abuse").

Plaintiff next suggests that the ALJ erred in relying on Dr. Moeller's report regarding Plaintiff, because when forming his opinion Dr. Moeller did not have all of the medical records which are contained in the administrative record.  The court finds no error.  The ALJ accorded "only some weight" to Dr. Moeller's opinion.  (R. 23).  Moreover, although the ALJ recognized that Dr. Moeller's "opinion is generally consistent with the available medical records during periods without substance abuse or misuse of medication," he also recognized that other records suggest greater limitations, and he noted that he found Plaintiff's allegations of symptoms more credible than Dr.

Moeller apparently had "despite the inconsistencies and non-specific information provided." (R. 23). Here, the ALJ clearly considered all of the record evidence, and did not unquestioningly rely upon Dr. Moeller's opinion. It is the ALJ's responsibility to consider the evidence and determine the question of disability. He did so, and Plaintiff has not demonstrated error in the ALJ's decision resulting from the fact that Dr. Moeller did not have all of the medical records when he formed his opinion.

In her next argument, Plaintiff points to the global assessment of functioning (GAF) scores assigned to Plaintiff in her ComCare treatment records, argues that she was given a GAF score of 48, indicating serious symptoms, every time she was examined in 2011, and points out that "as of October 2010, through 2011 to August 2012, the longitudinal medical record showed [P]laintiff was not engaging in substance abuse." (Pl. Br. 7). Again, the court finds no error. The ALJ provided an extensive summary and discussion of the medical records, reports, and opinions regarding Plaintiff's mental impairments. (R. 20-25). As discussed extensively above, he recognized that Plaintiff had ceased substance abuse, and he considered her limitations both when she was using, and when she was not using. Here is the ALJ's summarization of Plaintiff's treatment records after 2008 when she was not using:

> Meanwhile, the claimant's records now reflect few symptoms, intact memory, attention, concentration, fair insight and judgment, and a generally good response to treatment (Exhibit 20F, p.1-2). However, she subsequently appeared for her appointment while "over-medicated" and she provided questionable information on ongoing substance abuse (Exhibit 20F, p.5). Her functioning was impaired at that time. Her treatment notes then raise concerns about abuse or misuse of her medications.

The claimant's 2009 treatment notes suggest few significant symptoms, except those related to overuse of medication (Exhibit 21F). Then, in 2010, there were additional concerns about misuse of medication and over-medication (Exhibit 21F, p.24). Her mother also expressed concerns about misuse of medication (Exhibit 21F, p.24). Again, the claimant displayed few significant symptoms except when suspected of overuse of medication. In contrast with reports of overuse, the claimant told her therapist she had discontinued medications in September and December 2010 (Exhibit 22F, p.7; Exhibit 23F, p.9). She did display some increased symptoms, but she was informing her medication provider that she was taking medications and not having any problems.

Then, in January 2011, the claimant reported improvement (Exhibit 24F, p.16). In August 2011, the claimant was unable to afford her medications, and she reported increased anxiety (Exhibit 24F, p.10).

(R. 22).

Then, in 2011, the claimant complained of increased symptoms when not on medication due to alleged financial problems) [sic] (Exhibit 35F, p.10). Later, she complained of some depression and frustration regarding her living situation (Exhibit 35F, p.6). There is no indication these symptoms were significant. Then the claimant reported no particular problems while on medication in July 2011 (Exhibit 35F, p.1).

The claimant was subsequently admitted for anemia in July 2011. At that time, she alleged a history of schizophrenia and depression (Exhibit 36F, p.5, 7). These were described as well controlled with medication (Exhibit 36F, p.5, 7). However, there is no indication of schizophrenia in her Comcare [sic] records, and the claimant was denying hallucinations and related symptoms at that time. This suggests she was not accurately reporting her mental health history.

Similar to prior periods of increased symptoms, the claimant reported increased anxiety about her disability hearing and increased depression around the anniversary of her brother's death in 2012; otherwise, her symptoms appeared minimal (Exhibit 39F). Even during these periods of worsening, the claimant did not appear to have any difficulty with functioning, and her memory, attention, and concentration were intact (Exhibit 39F, p.2).

14

> Overall, it is clear the claimant does have mental impairments, in addition
> to her substance abuse, and she credibly reports symptoms related to her
> mental impairments.  However, when not engaged in substance abuse, the
> claimant reports minimal symptoms.  Furthermore, while she does report
> increased symptoms due to stressors, during these periods, the claimant's
> examination and treatment notes indicate she remains functional.  There is
> nothing in her treatment notes that suggests an inability to perform at least
> simple work when not engaged in substance abuse, and, while she has some
> social problems due to anxiety or personality disorder, there is no indication
> she cannot interact with others on a frequent basis.

(R. 23-24).  The record supports the ALJ's summary, and Plaintiff points to no error here.

Rather, she contends the GAF scores of 48 represent serious symptoms, and she implies

that somehow it was error for the ALJ not to specifically mention them, and that his

explanation did not adequately account for them.  The court does not agree with

Plaintiff's implied argument.

First, the Commissioner long ago determined that the GAF scale "does not have a

direct correlation to the severity requirements in our mental disorders listings."   Revised

Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.

Reg. 50,746, 50,764-65 (August 21, 2000).  And, the GAF scale is not included in the

latest edition of the American Psychiatric Association's Diagnostic and Statistical Manual

of Mental Disorders, at least in part because of its "conceptual lack of clarity," and its

"questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, Diagnostic and

Statistical Manual of Mental Disorders (DSM-V) 16 (5th ed. 2013).  As quoted above, the

ALJ summarized Plaintiff's recent treatment notes, and explained his evaluation of them.

Moreover, as will be discussed more fully below, the ALJ explained why he discounted

Dr. Lear's medical opinion, which was presumptively based upon Plaintiff's treatment at ComCare.  (R. 24-25).  The ALJ provided an adequate explanation of his evaluation of Plaintiff's recent treatment notes after she ceased abusing drugs, and at least in the circumstances of this case, it was not error to fail specifically to mention the GAF scores contained therein.

Plaintiff points to Dr. Lear's opinion that Plaintiff's condition meets the criteria of Listings 12.04 (affective disorder) and 12.06 (anxiety-related disorders), and argues that the ALJ ignored Dr. Lear's opinions.  (Pl. Br. 7-8) (citing R. 1192-98 (A "Psychiatric Documentation Form" quite similar to the Commissioner's "Psychiatric Review Technique Form," which is signed by an APRN (Advance Practice Registered Nurse) whose name is illegible, and by Dr. Lear.)).

The ALJ did not ignore Dr. Lear's opinion, he discussed it extensively, and he explained that he had given it "only some weight in this case as a whole, but little weight in evaluating the claimant's current condition, now that she has ceased substance abuse." (R. 25) (emphasis added).  In his first application of step three, the ALJ found that when considering concurrent substance abuse Plaintiff had one or two episodes of decompensation, and he noted that he made this finding despite Dr. Lear's contrary opinion which would be discussed later.  (R. 16).

In his RFC assessment when considering Plaintiff's condition without concurrent illicit drug use, the ALJ summarized Plaintiff's treatment records, including the most recent records of treatment at ComCare.  (R. 21-24).  Then, the ALJ provided an

extensive discussion of Dr. Lear's opinions in which he contrasted those opinions with

Plaintiff's treatment notes, and explained why he had accorded the opinions "some

weight" in the case as a whole, but "little weight" regarding Plaintiff's current condition

after she ceased substance abuse:

> In contrast to the functioning implied by her treatment notes, Rex Lear, M.D., provided an undated opinion in 2012 that suggested a much greater degree of limitation (Exhibit 40F). The undersigned notes that Dr. Lear is the supervising medical provider at Comcare [sic]; however, there is little indication he regularly saw or treated the claimant. Instead, her treatment notes suggest she generally saw a nurse practitioner under Dr. Lear's supervision. Furthermore, as discussed above, the nurse practitioner's treatment notes do not provide any basis for significant, ongoing functional limitations. Few functional problems or deficits were observed or documented and the claimant alleges few problems except in response to stressors such as her brother's death or when engaged in substance abuse.

> Specifically, Dr. Lear claims that the claimant has a memory impairment, perceptual or thinking disturbances, hallucinations, and incoherence or illogical thinking. These symptoms are documented in the record, but generally only when the claimant is engaged in substance abuse. Dr. Lear also opined that the claimant had a change in personality and catatonic or disorganized behavior: these are not documented in her treatment notes. In addition, Dr. Lear claims she has a history of "marked" limitations in activities of daily living and social functioning, with deficits in concentration, persistence, or pace (Exhibit 40F, p.2). However, these problems are documented only when the claimant was engaged in substance abuse.

> Dr. Lear then claims the claimant has experienced repeated episodes of decompensation and is unable to function outside a highly supported living situation. Neither of these problems is documented in her treatment notes. While the claimant does report worsening due to certain stressors, there is no indication these meet the criteria for an episode of decompensation, and, despite Dr. Lear's claim to the contrary, no indication these episodes are "constant. [sic] Furthermore, the undersigned finds some assistance from the claimant's family does not suggest an inability to function outside a highly supported living environment.

17

Similarly, while Dr. Lear's opinion regarding the claimant's symptoms is generally supported by the record, he notes many symptoms that have not been documented in several years, since the claimant ceased substance abuse.  He also alleges symptoms, such as recurrent panic attacks, that are not fully supported by the record; only a handful of panic attacks are even reported, and these are spread out over several years.

Overall, Dr. Lear's opinion does not appear fully supported by the medical record.  Moreover, many of the symptoms and limitations indicated are documented only during periods of substance abuse, when the undersigned acknowledges the claimant meet [sic] the listings discussed above.  As a result, this opinion received only some weight in this case as a whole, but little weight in evaluating the claimant's current condition, now that she has ceased substance abuse.

(R. 24-25).  This discussion is specific, detailed, and supported by the record evidence. The court finds no error in the ALJ's evaluation of Dr. Lear's opinion.  The decision does not suggest the ALJ found irreconcilable ambiguities or inadequacy in the record evidence, so Plaintiff's argument that "[i]f the ALJ believes that the medical evidence is ambiguous, contradictory or inadequate to allow for proper evaluation, the ALJ has a duty to develop the medical record to resolve such ambiguity or inadequacies" (Pl. Br. 8), is without basis in the record and without merit.  The ALJ provided specific, legitimate reasons to discount Dr. Lear's opinions, and he need not recontact Dr. Lear or further develop the record merely because he discounted Dr. Lear's opinions.

In her final argument, Plaintiff claims the ALJ failed to apply the correct legal standard in his credibility determination because he rejected Plaintiff's allegations of symptoms "without specifying why he reject[ed] these statements" (Pl. Br. 10), and

because there is no record basis "to support a finding that [P]laintiff's testimony was not credible." Id. at 11.

Once again, Plaintiff's argument misunderstands or ignores the ALJ's decision, and the reasons he provided for finding that Plaintiff's allegations "are not credible." (R. 20). The ALJ explained the standard he applied in determining the credibility of Plaintiff's allegations of symptoms resulting from her impairments. (R. 19) (citing 20 C.F.R. §§ 404.1529, 416.929; and Soc. Sec. Ruling (SSR) 96-7p). That is the correct standard, and Plaintiff does not argue otherwise. Moreover, she does not explain in what way that standard was misapplied.

The ALJ specifically discussed Plaintiff's alleged onset date of April 1, 1998, and the date she quit working in 2008 or 2009, and noted that her earnings record suggests no change in her ability to work before or after these dates and "raises a question as to whether her current unemployment is related to her impairments." (R. 20). He noted that the observations and opinions provided by Plaintiff's employer, Miller's Dry Cleaning, considered in conjunction with her treatment notes and work history "are more consistent with low work motivation than her impairments." Id. He also referred to "evidence the claimant is reporting inconsistent symptoms and incorrect information, as discussed below." Id. The ALJ then concluded that "these problems do suggest that her allegations and subjective reports may not be entirely credible," and he found that Plaintiff's allegations "are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." Id.

19

These are at least four reasons given by the ALJ to discount Plaintiff's allegations, and Plaintiff does not even acknowledge that the ALJ provided reasons.  Additionally, the ALJ noted that Plaintiff alleged an onset date in 1998, but "did not provide any evidence of her condition prior to 2007."  Id.  The ALJ noted that Plaintiff used cocaine in March 2008, but claimed sobriety on March 28, 2008.  (R. 21) (citing Ex. 1F, pp.21, 25 (R. 642, 646)).  The ALJ noted Dr. Moeller's report that Plaintiff "was non-specific about her alleged hallucinations," and that she complained of problems that were not evidenced on examination.  Id. at 22-23 (citing Ex. 25F, pp.9-10 (R. 940-41)).  Recognizing these reasons to discount Plaintiff's credibility, the ALJ gave "the claimant's subjective complaints some weight despite the inconsistencies and non-specific information provided."  Id. at 23 (emphasis added).  The ALJ noted Plaintiff's report of a history of schizophrenia when admitted to the hospital for anemia in July, 2011, noted that the ComCare treatment records contain no indication of schizophrenia, and noted that this fact "suggests she was not accurately reporting her mental health history."  (R. 23) (citing Ex. 35, pp.5, 7 (R. 1152, 1154)).  Finally, the ALJ noted that Plaintiff filed function reports alleging shortness of breath, blood clots, and vision problems, but that the medical records do not support those allegations.  (R. 25) (citing Exs. 18E, 22E, 30E).

Considering the ALJ's decision as discussed above, there can be no doubt that the ALJ specified the bases upon which he relied to discount the credibility of Plaintiff's allegations of symptoms.  Moreover, the record evidence supports the bases given. Plaintiff has shown no error in the decision at issue here.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 28th day of January 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**